With the lawyers who are going to address the court, please all step up for a minute. Before we get your names for the record, have you discussed among yourselves or thought about how to divide your time? There are two appellants and two appellees. Alan? We wanted to inquire how much time you want us to decide. Well, generally you have 20 minutes a side, so if you want to divide that in half and reserve like four minutes for rebuttal, I'd like only one of you to do with the rebuttal, but perhaps you could confer briefly before you get up and do the rebuttal. Does that make sense? Yeah, that's fine. And if you want to take 10 minutes each and then still have five minutes for rebuttal, that's fine. I'm just going to do the admissibility of the evidence and take 10 minutes. And I'll address the pleading issues and manifest weight of the evidence to the extent that hasn't been addressed, so 10 minutes. Okay, so basically split it in half as well. All right, why don't you tell all of us your names and who you represent. Bruce Bornstein, I represent the father of Mr. DeLuna. My name is Suzanne Isaacson, assistant public defender representing the mother appellant in the 0427 appeal. My name is Jean Agathon and I'm an assistant public guardian. I represent the three children in the case, Rosa, David, and A.D., the youngest child. Assistant state's attorney, Gina DeVito, on behalf of the people of the state of Illinois. All right, you may all be seated. Let me just remind you all that this microphone does not record, I mean does not amplify, it only records, so keep your voices up nice and loud. And whichever one of the parents wants to begin may begin. Okay, may it please the court, I'm going to primarily focus at the beginning. Identify yourself please. Oh, I'm sorry, my name is Suzanne Isaacson, assistant public defender for the mother appellant M.D. I'd like to focus in the beginning on the circuit court's understanding of the procedures pertaining to petitions and findings in juvenile court. At a pre-trial hearing on February 3rd of 2017, the court articulated its understanding of the law. This court is now limited to what's pled in the state's petition. In terms of the findings, I follow the evidence wherever it leads. Also, the way juvenile court works, at the end of the adjudicatory hearing, I regularly make findings that haven't been pled, and several other statements to that effect, and Did either of the parents make an objection to that statement by the trial court? Well, at that time it was not the adjudicatory hearing. I think that what was before the court then was one of the parents or both were filing a petition of their own saying that the minor R.D. should be dependent, and I think that was actually allowed to be filed. So there wasn't really, you know, notice at that time back in February of 2017. that the ultimate findings of evidence were going to be. I think this is even before the video outcry of the cousin. And then in terms of did they ever object, certainly they objected to the pieces of evidence in all cases, whether on hearsay or not admissible because minor not subject to the one pled in the petition. Also, for the lack of care, when the evidence of the A.D.'s medical records came in, the mother said, oh, I object on relevance. She's not in the petition. Also, in closing argument, when one of the parties said, oh, well, you can make a finding also on lack of care for the other child because of the two incidences of the many years, the two days of an asthma discrepancy in protocol. The attorney for the mother also said, oh, that's not in the petition. So I'd also, we do cite in our reply brief two cases about there shouldn't be waiver when you need guidance to the courts as to a consolidated understanding of the law, which I don't think we have here. Our position here today is that the court misconceives the Juvenile Court Act and due process of law. And in the absence of an amendment, it is not permissible to first of all make abuse or neglect findings on statutory grounds not alleged in the petition. And second, to make findings under statutory subjects, even though pled in a statutory nomenclature, but based on evidentiary facts, completely different from those set forth in the petition. All of the adjudication findings here violate those procedural requirements because the court did not find by a preponderance that the one minor about whom facts were alleged in the petition was sexually abused by the father, which was the premise of the allegations. Rather, it found the minors abused or neglected based entirely on unpled provisions or unpled factual allegations. Would an amendment to the pleadings have cured this problem? It would have if perhaps if it would have been done on time as contemplated by 213 subsection 5. There's a preference for certainly 14 days, I believe, before the hearing unless good cause is shown. And then the other side has to be given by the court an opportunity to prepare their case in light of that. Well, was that type of objection ever made? I don't think that I do not recall that the attorney for the mother cited subsection 5. Is this a civil proceeding? It is. Would the civil code of civil procedure apply, then, that allows for amendment of pleadings up until any time before final judgment? Well, the statute gives a preference. The Juvenile Court Act? The Juvenile Court Act, I would think, being specific, would trump the civil act, and the civil pleading rules generally apply. But then, of course, you have the prejudice constraints, even under regular civil cases. So if you're correct, what's the remedy? Outright reversal, reverse and remand, start all over again, file a new pleading? What? Yes. The court agrees that you cannot have such a discrepancy between the pleadings and the findings as you do here, and that the findings in the petition were not proved, as they were not, and there was no proper amendment. I would submit that the proper remedy is an outright reversal, and that would be the case.  I think it's up to the State to try to replead based on, you know, facts as they pertain. So you don't believe an amended petition would solve the problem? An amended petition was never sought. Had it been done in a timely manner, giving everyone notice and an opportunity to prepare a defense and to comply with the act, it – theoretically, they could have moved to amend, but even when given the opportunity to do so, for example, at the case management conference, they didn't. They didn't.  They didn't. They didn't. There was an empty box for lack of care. The question is, as the Court is aware, Section 213 requires that the petition  of fact, the Public Guardian has a disability, and I can understand the public guardian's understanding, even the one who's 18, to my understanding. The Public Guardian can certainly clarify. The one who's 18 has a disability also, correct? Correct.  And they are 18, 16, and 11. This is to satisfy due process, certainly. The appellate court in JB, in the second district, takes the same position as we do. It reversed where one ground was pled, but the court made a neglect finding on another ground, remarking that in civil cases generally it is well settled that a party may not succeed on a theory that is not contained in the party's complaint, and can only win the case according to the case the party has presented in the pleadings, even if the evidence was presented on the theory that the court ultimately used. The court's misconception here is based on an improper extension of the case that the court cited, Patricia S. The court cited Patricia S for the idea that courts are supposed to affirmatively and aggressively ferret out information. But that and Patricia S, the court did say that there, but it came in the context of deciding whether a child should be removed from its family at temporary custody. In that case, the parent prevailed because the court did not ferret out enough information on DCFS's reasonable efforts to keep the child home. Temporary custody is not governed by 213, which governs petitions for adjudication. Temporary custody is authorized by another section, 2-5, and it does not have these pleading requirements. How do you distinguish, if you do, and I think you do in your brief, but in re Sharina H., which is the case of this district? I wrote from, let me get my note. For Sharina H., there was a finding of a, I believe, neglect, injurious environment, and the child was drug exposed. So both of those were alleged in the petition. Then at the hearing, there was a mention of domestic violence in the home. And the court, but there was no domestic violence in the pleading. The court, when it was making its findings, as I recollect, made findings based on the drug exposure issue of the child, and in perhaps a laundry list also mentioned the domestic violence. Therefore, it was harmless. That was just one of many factors. The main points relied upon by the court were the ones that were drug exposed. And I think the court there did cite J.B., the second district case that we cite, but distinguished it because it didn't depart from the statutory ground of environment injurious. J.B. said it's wrong to have two different statutory grounds. In Sharina, even the domestic violence was supported, although not mentioned in the petition as an additional reason supporting environment injurious, which was alleged. Just so I'm clear, in this case, there was both a different statutory ground in terms of care necessary, and then on the injurious environment was a different factual basis. An additional factual basis. Well, a different factual basis in that the trial court specifically found that the factual basis that had been alleged had not been proven, correct, in this case? Oh, in our case. In your case. That's correct, right. Okay. So it's a different factual basis and a different statutory ground. Correct. And then the Tyrese J. case, which our opponents cite, there the State did make a motion to amend. It was improperly denied. It did come late. The case cites 213, subsection 5, holding that the amendment should have been allowed. The court did go on to say that, well, and courts can even amend a pleading sua sponte, but I would question that as not consistent with the act. And in any case, in that case, the facts about the drug-exposed infant also in that case were the same under both provisions and actually alleged in the petition. It was just as a clerical oversight, a statutory ground citation was omitted. So there was much less potential for prejudice than here. Unless there's questions, I'm going to stop you to get your co-counsel, not co-counsel, but co-appellate. Okay. Thank you. Does anybody have questions? No, sir. Okay. As the court is aware, the trial court found that the outcry of the cousin was corroborated through her sister and another cousin. The outcry of the cousin was basically, was basically that she was abused, raped by the father is what she said. She said that in a forensic interview. Her sister also went through the interview and so did her cousin. It is our contention that there was actually no corroboration which would support the trial court's findings that Mia was abused, which would allow its findings as to Rosa and her siblings. Mia indicated first that she was three or four when this happened. Then she indicated she was eight or nine. This is in response to her sister's conversation with her where she said, well, it couldn't have been when you were three or four because we weren't living with the grandparents at that point in time. Mia also indicated that she went to the father's room to do homework, while her cousin, her male cousin who was interviewed forensically, indicated they never went to the father's room for homework. Mia also indicated that she, after this incident, ran from the room, crying, went downstairs. Other family members saw her crying. Her male cousin who had come back to the room, he had left the room and come back, indicated that he never saw Mia cry when she left the room. Okay, this all undermines her credibility, but what about corroboration? Isn't the fact that there was some corroboration that she had suffered trauma, that she was having nightmares? Is that not, can that not be corroboration? No, actually I don't believe that there was corroboration by the sister or the cousin that she was having nightmares. She indicated that she was having nightmares, but I don't believe that there was any corroboration of that by the other two minors who were interviewed. She also indicated that she was suicidal and she was cutting herself. There's absolutely no corroboration in the record that anybody ever either observed the cutting or heard any suicidal threats made by Mia. And I think it's also important to point out that Mia indicated that she was raped by a father. There's absolutely no corroboration from any medical source that there was anything wrong with Mia physically. This is a minor who you would assume would have gone for physical exams or to a doctor somewhere during the time period after she alleged this happened, that there would be some report from a doctor or medical exam indicating that type of abuse. There is none. Also doctors are mandated reporters obviously and they would have to report something as serious as that. So you have absolutely no corroboration from any medical source. There's also no corroboration of her suicide allegations. You would think that her family, somebody in this extended family, if they had heard that, would have come forward and said, I heard this, or would have told Mia to seek some professional help. Nothing. There is absolutely nothing in the record indicating corroboration of anything that Mia said. And your view, and this may be right, I don't know, but just your understanding of the law is that the corroboration has to be completely external to her victim-sensitive interview statement. That is correct, yes. Because obviously Mia can say anything she wants at this point, or any minor can say anything they want. Without that corroboration, external corroboration, I think that that falls apart and certainly cannot be the basis of the trial court's finding, which in this case, Judge McCoss I think made it pretty clear that the findings of all three minors in this case were based on Mia's outcry, which of course was never alleged in the original petitions. Which is why you're talking. That's correct. And so it was nowhere up until the forensic interview that they were all heard. And it's also interesting to note that Father, even though he was arrested, got a detective in this case, Father was never convicted or even charged for anything that allegedly happened to Mia. So there's nothing in the record that would support the trial court's findings absent the alleged corroboration, which we would submit to the court there was none. The trial court also indicated its findings for neglect in jury's environment based on the fact that the minor out of zero was neglected because of medical reasons. Her mother didn't take her to the dentist. Well, not in the dentist. That was something that was in passing. But I think it was more of the asthma. Not purchasing the asthma medicine. Yes. And that was mentioned in two sentences in closing argument by the state and two sentences in closing argument by the guardian. Never been brought to the attention of any party before their time. Simply not alleged in the petition. And not alleged in the petition. Obviously, the parents could not defend against that when they heard it for the first time in closing argument. The state had two years. This case came in in 2015. Trial in this case started in 2017. The state had two years to put in an amended petition that they were alleging neglect in jury's environment based on the fact that mother didn't take this minor for her asthma appointments and gave her prednisone. And so my response to that is, so what? Do we have any evidence from any medical source that this minor was in any way harmed or hurt by what her mother did regarding the asthma? And the answer to that is no. Zero evidence. Once again, the doctors, the hospital personnel, I mandated reporters. If they saw that this minor was at risk of harm because her mother gave her prednisone rather than an inhaler, they're mandated to make a hotline call. That never happened in this case. Once again, there's no external corroboration by any source that this minor was harmed at all by the fact that three months went by without her medication. So once again, father would submit to the court that the trial judge's findings in this case are insufficiently based on really no evidence at all that would support the neglect environment in jury's findings by the court, which were based on Etta's hearing not having her parents attend to her medical needs. And that's clearly indicated on the adjudication orders for the three minors. Also, the fact that the trial court found abuse substantial risk, once again, based on Nia's outcry, we would submit that because there was insufficient evidence to support that, there is no basis for a trial court's finding of abuse substantial risk for the three minors. What limits, if any, do you think there are on the state's ability to simply file a new petition and begin again? If you have a response to that. To be honest, I have not thought about that. Because if this were a criminal case, it would be a double-judgmental case. It would be a double-judgmental case. And that's the issue. But there are some fundamental liberties involved here. There are fundamental liberties involved. There are. There are. And that's really the crux of these cases. Sometimes the substantial constitutional rights of parents, even though everybody says that, they're really not applicable because everybody looks to the minors and is concerned about the best interests of the minors. The problem is, I think as this case shows, minors sometimes don't tell the truth. And when minors don't tell the truth, when you're dealing with serious allegations of sex abuse by a parent, a family is torn apart. This is a civil proceeding. So if this court would lean back to the trial court, I would assume that the state would come in and file a neglect and abuse petition. All right. I'm going to stop you. I bet you guys will have five minutes. If you want to address that further at that point, you certainly can. Do you have a question? Yes, just real quickly. It's kind of on the same line of justice, this question, but I want to go back to Justice Pierce's question to your partner here. What do you see procedurally as the best way for us to go forward with this case? Because I don't know who's going to deliver, but I may not get a chance to ask you this question. Well, procedurally, I mean, we're asking this court to reverse the trial court's findings as to all the minors. If this, as you indicated, Justice Walker, this was a criminal case, the issue would be whether there would be a retrial then and whether that could happen. This is a civil matter. I think on a reversal and a remand, it's up to the state to proceed on how they want to proceed. If this court finds that the evidence was totally insufficient to support the allegations, I would suggest to the court that you can reverse and not remand and have the petitions dropped because the state has already put forth its best evidence. That evidence was insufficient. If it was insufficient now, it would be insufficient subsequently and therefore just reverse and have the petitions dropped outright with no remand. Thanks. Assistant State's Attorney Gina DeVito, on behalf of the people of the state of Illinois, I will be addressing the admissibility of the evidence today. I would just like to make very clear to this court that M.Z. or Mia's victim census-sensitive interview was properly admitted and did not need to be corroborated by any other evidence. That is because it was not the sole evidence of the neglect finding. And this is because the Juvenile Court Act makes clear under Section 218.4.C that corroboration of a minor's hearsay statement is only necessary when a statement alone supports a finding of abuse and neglect. Here, there is a great deal of evidence that shows that the environment was injurious to these minors and therefore corroboration of the statements was not necessary because no statement alone supported the finding of neglect. Neglect can't be- No statement alone supported- Correct. You're saying when the statements all come together, they do. That's your argument. My argument, Your Honor, is that corroboration for any of the statements was not necessary because we were making a finding of neglect, not abuse to the sexual- We were not trying to show that the father sexually assaulted Mia and make a finding of sexual assault to the father. We were trying to show that this environment was injurious to these children. So each piece of the injurious environment can be based completely on uncorroborated hearsay? Based on- Those who made out-of-court statements that the father did drugs, abused them, whatever, and it's all complete hearsay, and that's fine. That's your position. That's your understanding of- The statute, Your Honor- 214-2-18-4-C. Right. It does- What's the case that says that? The case that says that is N. Re. Gabrielle E. And that case is almost identical to this case, Your Honors. There, it was also a violation of a safety plan where the mother evaded DCFS and lied about the father being around when there was domestic violence accusations. And the minor had an out-of-court statement to a teacher that the father was abusing him, which is very similar to here. But here, we have even more than that because we have additional evidence of M. Z.'s sexual assault and their failure to fill A. D.'s asthma medication. And in Gabrielle- Excuse me for one second. Do you agree with Mr. Borstein that there was no corroboration of N. Re. M. Z.'s out-of-court statement? No. No. So it's going back to if you don't want to apply the act, as I'm interpreting it here, Your Honor, the state would contend that there is corroboration on numerous- Including specific- Including- and M. Z.'s sexual assault is corroborated in her sister's testimony. The Guardian Ad Litems Brief cites several cases, Walter, BJ, CC, that show that a child's demeanor is corroborating. And here, we have nightmares, waking up and being afraid, cutting and threatening of the sister to not tell. And then we also have the mom's statement that M. Z. was living in the home at the time that this is alleged. And that is corroborating. Okay. So we do have corroborating evidence. We have corroboration also that the safety plan was violated where the police officer testified that the father was found in the home after the safety plan was implemented to protect R.D. from sexual violence perpetrated by her father that DCFS had found that needed to be taken seriously. And it was not. In addition to that, the mother forced D.D. to lie about the father living in the home. The other evidence that would support this court not needing a finding of corroboration of these statements under 218-4C is that there was a prior indicated report by DCFS for Juan against R.D. that the father was alleged to be doing illegal narcotics in the home. There was the noncompliance with the asthma medication. And the overall testimony of this adjudication hearing where this family could not communicate with their daughter. And if I can just go back to Gabrielle, it is the same statement. It is a very similar fact situation as here. And in that case, this court found that the hearsay statements of the minor to the teacher were not presented or considered to show the father was abusing the children because the people proceeded based on neglect as we did here. But the crux of the finding here as to an injurious environment really rested very heavily on the judge's determination that M.Z. Is that M.Z.? Yeah. That the cousin had been sexually abused by the father. That was the heart of it. And if you take that out, yes, maybe there's other evidence of injurious environment, but that was the heart of it. And, you know, we will read in Ray Gabrielli, but it's hard to believe that there doesn't need to be some corroboration of that. And, Your Honor, as you can see from our briefs, I kind of followed that down the rabbit hole also and discussed corroboration at length in my brief. And, you know, delving into it for preparing for this oral argument, it became very clear that that is not what is required under the section. 218-4C is very clear, and Ray Gabrielli really makes it clear that because there was a finding of neglect, not abuse, no corroboration was necessary where it is not the sole evidence against the parents for the findings. If there are no further questions, the people would ask that this court affirm the juvenile court's evidentiary findings, and I will let the public guardian address the other issues. Sure. Any questions? Good afternoon. My name is Jean Idafin. I'm an assistant public guardian. I'm here on behalf of the three children. I'd like to start by just touching on a couple of points my opposing counsel made. First of all, Father's attorney argued that Mia claimed she had been raped by the father. I never saw that word. I never saw that allegation. She did allege facts that would certainly constitute sexual molestation. She alleged that she was thrown down on the bed when she went to ask for help with her homework, and the father pulled her pants down and felt her down there, and I assumed she was raped. Then the cousin knocked on the door, and the father let her go. So what we know is what happened. We don't know what would have happened, but she never said she was raped. It was not to that level, and as for counsel's point that why didn't people do anything about this? Why didn't somebody report it? Why wasn't DCFS involved? It's because she never wanted to tell anybody. She said she thought people would laugh at her. But here's the why for us. Why was the petition never amended if you were going to ask or the court was going to rely so heavily on this allegation when the statute seems very clear that there needs to be an amendment to the petition? You're talking just about the sexual molestation. No, several things, the failure to give medication, all the things that the court relied on. There was, I believe, only one specific factual allegation in the petition, and that was the one the court said wasn't sustained by the evidence. Well, the other factual allegation, Your Honor, was a violation of the safety plan. So those were the two facts that I showed in the petition for all children. You're correct, Your Honor. So those two facts. The answer, I think, is partly that this trial lasted 10 months. There were, the parents were allowed to file petitions, dependency petitions, after adjudication started. Witnesses were taken out of order. The very first witness was Tamara Hoag, who was a witness for the parents. This was a very long proceeding, and the court, I would say, the trial court bent over backwards to give parties a chance to introduce exhibits, to add witnesses, and the fact is that, for example, the V.S.I.s of, the statements of Mia and her older sister weren't even known about at the time this trial started. Okay. They were known of before the ruling. I guess the question is more than why it didn't happen, because, you know, hindsight's 20-20, is why is it okay when the statute specifically says in all cases in which the court has granted leave to amend based on new evidence or new allegations, new evidence or new allegations, the court shall permit the respondent an adequate opportunity to prepare a defense to the amended petition. Why is it okay that there was never an amended petition and never an opportunity to prepare a defense? Well, Your Honor, I think we're in, we have two different sets of issues, as you indicated earlier. One is with respect to the sexual, the allegations of sexual molestation by Mia. The state did indicate that it intended to introduce those V.S.I.s after it became aware of them. Yes, as corroboration for the original allegations. Not as new allegations, but as corroboration. I've read that motion. It's pretty specific. We're going to let this in as corroboration of the allegations that we've already made in our petition. Which is why they didn't file the petition. For, well. The amended petition to include that allegation from M.C. The public guardian actually filed a motion to amend the case management conference order to include those, in a lengthy motion, to include those three V.S.I.s on the case management conference order. And the state indicated that it planned to introduce the V.S.I. of Mia. Now, Your Honor. As corroboration, though, not as new allegations. That's my point. You never said, we're going to rest our showing of injurious environment on the fact that this cousin was sexually abused. Never, never said that. Said, this is going to corroborate our initial allegation. It came in as additional evidence. And I think it was in the court's discretion to use that evidence in support of the allegations of NEI and ASRI. And I would like to add that in response to Your Honor's earlier point. The court did not stop with saying Mia was sexually molested. The court specifically said in its 46-page, very thorough ruling, that the evidence doesn't stop there. The evidence does not stop there. That's not all I'm basing my ruling on, basically. He went on to add the incident about the father shooting the mother in the chest. Also not in the petition. Also not in the petition. It's my understanding that that was an accident. Your Honor, clearly the trial court didn't buy that it was an accident. He found the mother's credibility questionable. He specifically said, I find the mother's credibility questionable. She claims it was an accident. Whereas David said, and remember this obviously happened in the bedroom where the children were asleep. The father comes home late at night. That's where the whole family slept. They all slept in one room. But David told Maria Wontek, the school social worker, the dad came home late at night. The parents started arguing. And he saw his dad grab a gun and shoot the mother. That was David's statement to Maria Wontek. So the court did not believe this was an accident. That was one of the pieces of evidence that it cited in support of its ruling. The other was the indicated report of sexual abuse by the family friend, Juan, who, by the way, Detective Warniak said the parents were absolutely not cooperative in helping him do that investigation. They wouldn't provide any information about this Juan person who stepped in their bedroom occasionally on the floor. Then there's the violation of the safety plan issue. Both parents admitted to Mary Marban, the DCP investigator, that they had violated the safety plan. Did the court mention the violation of the safety plan in his oral ruling? It's not in his written ruling. Your Honor, I don't think he stressed that. I'm not sure he mentioned it. But at any rate, certainly that was a large part of the state's argument, and I believe our office also on behalf of the children argued that, because at that point it wasn't up to the parents to decide that Rose's outcry was not going to be found credible. She had just been found to have been sexually abused by this family friend. And the very next month when she makes the outcry about the father, the parents decide, well, it's okay, you know, the father can stay in the home. That showed a great disregard for the welfare, not only of Rose but the other two children. And this may be more a question for the state, but what is your position on what can happen if we reverse for some of the deficiencies that we've been discussing? Well, I would certainly hope that the court would find there was the manifest way that the evidence supported the NEI. They didn't support the allegations in the petition. Nobody has found that. I mean, that's your problem here, right? They supported the two counts alleged. And NRA Serena H., as Your Honor alluded to earlier, does say if there's a count alleged and additional evidence is supported in support of that count, is introduced in support of that count during the adjudication, that's fine. That can be considered. It has to be remembered that all juvenile court cases... It can be considered, but the finding would still have to be made on that count that's in the petition. And in this case, the court specifically found that there was no abuse to RD. No sexual abuse. You're right. You're right. That's correct. So the situation with the sexual abuse count to Rosa is certainly different. Right. So, therefore, the other information regarding MC was offered to bolster the count as to RD. But the court specifically found that RD was not abused. That's correct. And then made a finding that MZ was. And because MZ was, therefore, he granted the state's petition. Your Honor, I'm not aware of anything that says once evidence is in, that it can only be considered for a little part. The evidence came in. This was general evidence. Once again, the finding, the ultimate finding in this case is based on a fact that was never alleged or alleged in the petition. Well, again, Your Honor, as my co-appellee and I have both said, there were a lot of circumstances that the trial court relied on. For instance, I'm finding it was certainly not just the sexual molestation of Mia. It was this whole other set of circumstances. There were a great, great number of circumstances, starting with the father shooting the mother in the chest, which caused great distress to David. And Rosa started cutting herself about two months after that happened. So there were a whole set of circumstances here that constituted the NEI. And he is. I think you're almost out of time, but I think Justice Pierce has a question. I have an observation and a question. The observation is to one of your first statements. Pleadings matter. Proof matters. Pleading and proof matters together. The trial attorneys have to learn that what they plead they have to prove, and what they prove has to be in the pleadings. It's really that simple. So if it went ten months, they had ten months to constantly, vigilantly look at the pleadings to see whether their projected proof was going to conform with the pleadings. Secondly, what is the status of these children today, if you know? Yes, Your Honor. Rosa is currently in a school for the deaf and hard of hearing. Are they still wards of the state? They are, Your Honor. Both? Yes, all three. All three? Yes, still wards of the state. And they are all placed out of the home in separate placements. So their status really has not changed since this hearing? That's correct. Although David may be in a different school. You mean their status with the state and with their parents? That's correct. That's correct. They are still all wards of the court. Thank you. Thank you. In closing, we would ask that the court affirm all of the findings of the trial court and help keep these children protected. First of all, N.C. did say she was raped, and she said that to her sister. That's right in the sister's VSI. I was raped. Nobody believes me. So she did make an allegation of rape, not molestation. Gabriel E. The court was very clear in Gabriel E. He didn't need corroboration because it was never an allegation of abuse, substantial risk of physical injury. The court in this case specifically made a finding of abuse, substantial risk of physical injury. There's a difference between Gabriel E. and this case. And the court based that on specifically in its order and in its oral ruling on the sex abuse of M.Z. So based on the court's specific oral and written rulings in this case, corroboration is required. The safety plan that you're talking about never mentioned in the trial court's oral ruling, never mentioned in its written adjudication findings. The family couldn't communicate with Rosa. Where is there a basis of a finding of neglect? Rosa alleged anywhere. Even if it was alleged, I don't think you could ever make a finding of neglect based on the fact that the family could not communicate with somebody who was hearing impaired, who needed two interpreters at trial, two deaf interpreters. Where is that neglect? The indicated report by this Juan person, he's either a friend or a cousin. The indicated report by DCFS was against Juan. It was not against the parents. So that is totally irrelevant to anything in this case. So what you've heard from the state in regard to support the trial court's findings, you actually did not support the findings at all because it's not a basis of anything that the trial court found. And also the JP case that we cited in our briefs, I believe was an outright reversal by the appellate court in that case with no remandment. So based on what the second district did in that case, I believe this court has the authority to reverse outright without any remandment. Thank you. Thank you, counsel. Thank you. We will stand in recess.